# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) CECILIA SLATER, Individually And On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>(1) HOME LOAN INVESTMENT BANK, a Federal Savings Bank,<br><br>　　　　　Defendant. | 4:20-cv-00405-CVE-FHM |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Cecilia Slater ("Plaintiff" or "Mrs. Slater"), individually and on behalf of all other similarly situated, by and through her undersigned counsel, and submits this Class Action Complaint seeking damages and injunctive relief based on Defendant Home Loan Investment Bank's (the "Bank" or "Defendant") discriminatory and unlawful policies which treat women on maternity leave different than other applicants. Mrs. Slater seeks damages and injunctive relief on behalf of herself and the class she seeks to represent. In support hereof, Mrs. Slater asserts as follows:

## JURISDICTION AND VENUE

1. Mrs. Slater resides in Copan, Oklahoma and is the mother of one minor child.

2. The Bank is a Federal Savings Bank with its principal place of business in Warwick, Rhode Island. The Bank conducts business in Oklahoma including accepting applications from and issuing credit to Oklahoma residents.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 because this case involves one or more claims arising under federal law.

4. This Court has subject matter jurisdiction over Mrs. Slater's claims alleging violation of the Fair Housing Act, 42 U.S.C. §3602 *et seq.* pursuant to 42 U.S.C. 3613(a)(1)(A).

5. This Court also has subject matter jurisdiction over Mrs. Slater's claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* pursuant to 15 U.S.C. § 1691e(f).

6. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district and the property that is the subject of this action is situated within this judicial district.

## FACTUAL ALLEGATIONS

7. Mrs. Slater hereby adopts and incorporates by reference all of the statements and allegations contained in paragraphs 1 through 6 of this Complaint as if fully set forth herein, and in addition, states:

8. On or about May 22, 2020, Mrs. Slater and her husband sought a loan in the amount of $41,548.00 (the "Loan") from the Bank to make improvements to the home located at 400313 W. 600 Road, Copan, Oklahoma 74022 (the "Home").

9. Initially, Mrs. Slater's husband was the only applicant as the couple originally thought his individual income would be sufficient. However, due to a car loan Mr. Slater obtained in his name during the financing process with the Bank, the lender,

Eric Schwartz informed Mr. Slater that he no longer met the requirements for Loan due to the change in debt-to-income ratio.

10. As a result, Mrs. Slater was added as an applicant for the Loan so that her income could be considered.

11. Mrs. Slater submitted her pay information for 2018 and 2019 as well as current pay stubs.

12. Upon review of Mrs. Slater's income information, the Bank issued a non-binding verbal approval of the Loan.

13. However, after issuing the non-binding verbal approval, the Bank's underwriter noticed that Mrs. Slater was on maternity leave.

14. At this point, the Bank notified the Slaters that "They won't let me use your wife's income if she's not currently working. When does Ms. Slater go back to work?"

15. In response Mrs. Slater and her husband provided the Bank with documentation that Mrs. Slater had agreed to return to work following her maternity leave. Moreover, in accordance with Federal Law and company policy, Mrs. Slater's employer held her position for her while she was on maternity leave and paid vacation time. Mrs. Slater submitted documentation to the Bank demonstrating the same.

16. In response, the Bank stated "The letter won't help. I'm sorry."

17. Mrs. Slater continued to receive 100% of her usual pay from her employer while on maternity leave and offered to provide documentation supporting the same but the Bank still asserted that such documentation was insufficient.

18. The Bank claimed that it was unable to use Mrs. Slater's income because the Bank could not verify that she would return and that her employment would have to be guaranteed for the next two years.

19. Mrs. Slater and her husband, growing frustrated, raised their concerns to the Lender that the Bank's actions seemed discriminatory. Mrs. Slater and her husband sent an e-mail to the Lender raising these concerns which included links to multiple news articles as well articles regarding the Fair Housing Act specifically addressing discrimination under similar circumstances.

20. In response, the Lender stated "I showed what you sent me and because this is for Title 2 Loan it does not apply. My loan is a Title one loan. Sorry we will have to wait till August 24$_{th}$."

21. Mrs. Slater's husband then contacted John Kupervich ("Kupervich"), Vice President of Home Improvement Lending at the Bank and lodged a complaint. During this call, Mr. Kupervich stated, among other things, "sometimes a woman has a baby and chooses not to return to work."

22. Kupervich also stated that 2020 is the year for discrimination claims.

23. During this call, Kupervich reiterated the requirement that the Slaters provide a letter from Mrs. Slaters employer guaranteeing her employment for 24 months following the birth of their child or that Ms. Slater go back to work early to allow them to be able to close the loan now.

24. In support of this policy, Kupervich stated to the effect that "this is the way we have always done things."

25. As a result of the Bank's discriminatory policy, Mrs. Slater has suffered financial injury including but not limited to: (1) delay in obtaining financing resulting in lost opportunity and loss of use of the proposed home improvements which the Loan was intended to support, and (2) unnecessary out of pocket expenses. Additionally, Mrs. Slater suffered substantial emotional distress and interference with her post-delivery recovery and time with her newborn child. Mrs. Slater and her husband were forced to devote considerable time and effort to deal with the stress and delay caused by the Bank's discriminatory actions during the first month of her newborn child's life. The Bank's discriminatory actions inflicted additional unnecessary stress and disruption during Mrs. Slater's critical initial bonding time with her newborn child.

## CLASS ALLEGATIONS

26. Mrs. Slater hereby adopts and incorporates by reference all of the statements and allegations contained in paragraphs 1 through 25 of this Complaint as if fully set forth herein, and in addition, states:

27. The conduct, policies, and practices of which Mrs. Slater complains are common to a class (the "Class") and consists of:

> **all persons within the United States who, within five (5) years prior to the filing of this Complaint, up to and including the time of a trial herein, attempted to obtain credit through the Bank for a residential real estate transaction including for the purpose of purchasing, construction, improving, repairing, or maintaining a dwelling and who were, or expected to be (or whose co-applicant was, or expected to be) on maternity leave at the time of the closing of the loan.**

28. The members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class is comprised of thousands of individuals.

29. This action can be efficiently and effectively managed as a class action. The size of the Class is not so large that management of the action as a class action will be excessively difficult.

30. There are questions of law and fact that are common to the members of the Class which questions predominate over any individual issues.

31. Mrs. Slater's claims are typical of the claims of all members of the Class. By proving her case, Mrs. Slater will simultaneously prove the case of the members of the Class.

32. Mrs. Slater will fairly and adequately protect the interests of the Class. Mrs. Slater is willing and able to serve as the Class representative and has no knowledge of any possible divergent interest between or among herself and any member of the Class. Mrs. Slater has engaged competent counsel capable of providing effective representation for Mrs. Slater and the Class.

33. The pursuit of separate individual lawsuits by members of the class would result in the risk of inconsistent and varying adjudications.

34. The pursuit of separate lawsuits by class members would result in inconsistent and varying adjudications which would, as a practical matter, be determinative of the interest and claims of other members not parties to such rulings and, at a minimum, substantially impair the ability to protect their own interests in obtaining redress.

35. The Bank has engaged in similar conduct with respect to the Class so that final injunctive or declaratory relief is appropriate with respect to the Class in its entirety.

36. Questions of law and fact common to the Class predominate over any questions affecting individual members. This case involves one key legal issue:

> **Whether the Bank's policy and practice of treating applicants who were, or expected to be (or whose co-applicant was, or expected to be) on maternity leave at the time of the closing differently than those applicants who were not or did not expect to be (or whose co-applicant was not, or did not expect to be) on maternity leave at the time of the closing (the "Policy") constitutes unlawful discrimination.**

This predominating legal issue is a common issue affecting the Mrs. Slater and all members of the Class.

37. A class action would be a superior method of adjudicating the claims of the Class.

38. In light of the complexity of the issues and expense of litigation, the individual claims of the class members of the Class are insufficient in amount to justify the filing of separate actions and, in the absence of class certification, members of the Class may be effectively unable to protect and enforce their individual legal rights.

39. The interest of members of the Class individually controlling the prosecution of individual actions does not outweigh the benefit to the Class of having their claims litigated as a Class.

40. Mrs. Slater is not aware of any litigation that has been commenced by or against members of the Class or the Bank involving the issues presented in this Complaint.

41. It is desirable to have the claims arising from the unlawful practice adjudicated in a single forum so that a single court may manage all claims relating to the discriminatory Policy set forth herein.

**COUNT I: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**

42. Mrs. Slater hereby adopts and incorporates by reference all of the statements and allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein, and in addition, states:

43. This claim is brought pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (the "ECOA"), which makes it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction…on the basis of sex or marital status." 15 U.S.C. § 1691a(1).

44. A "credit transaction" is defined as "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit…." 12 C.F.R. § 202.2(m).

45. The ECOA defines a "creditor" as any person who "regularly extends, renews, or continues credit [or] … arranges for the extension renewal, or continuation of credit…." 15 U.S.C. 1691a(e).

46. The ECOA defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit…." 15 U.S.C. 1691a(b)

47. The Bank is a "creditor" and engaged in a "credit transaction" with Mrs. Slater who is an "applicant" under the meaning of the ECOA.

48. Under 12 C.F.R. § 202.6 (a), "a creditor may consider any information obtained, so long as the information is not used to discriminate against an applicant on a prohibited basis."

49. The regulations specifically provide that "[i]n evaluating creditworthiness, a creditor shall not make assumptions or use aggregate statistics relating to the likelihood that any category of persons will bear or rear children or will, for that reason, receive diminished or interrupted income . . . ." 12 C.F.R. § 202.6 (b)(3).

50. The regulations further provide that "a creditor shall not consider…sex… in any aspect of a credit transaction." 12 C.F.R. § 202.6 (b)(9).

51. The Bank Policy as stated herein violates the ECOA, including but not limited to, the foregoing statutory provisions and regulations.

52. The ECOA provides a private right of action to any person or class of persons against any creditor who fails to comply with the requirements of the ECOA and related regulations. 15 U.S.C. § 1691e.

53. Mrs. Slater and members of the Class have suffered substantial damages as a result of the Bank's violations of the ECOA and related regulations.

### COUNT II: VIOLATION OF THE FAIR HOUSING ACT

54. Mrs. Slater hereby adopts and incorporates by reference all of the statements and allegations contained in paragraphs 1 through 53 of this Complaint as if fully set forth herein, and in addition, states:

55. This claim is brought pursuant to the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (the "FHA").

56. Section 3604(b) of the FHA makes it unlawful, "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex [or] familial status . . . ."

57. Section 3602(k) of the FHA defines "familial status" to include "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent…." Section 3602(k) further provides that "[t]he protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant."

58. Section 3605(a) of the FHA provides, "It shall be unlawful for any person or entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . sex [or]…familial status."

59. Section 3605(b) defines "residential real estate-related transaction" to include, "[t]he making or purchasing of loans or providing other financial assistance for purchasing, construction, improving, repairing, or maintaining a dwelling. 42 U.S.C. § 3605(b)(1)(A).

60. 24 C.F.R. §100.70(b) adds that "it shall be unlawful, because of . . . sex [or] . . . familial status . . . to engage in any conduct relating to the provision of housing or of services and facilitates connected therewith that otherwise makes unavailable or denies dwellings to persons." Prohibited activities under this section include "[e]mploying codes or other devices to segregate or reject applications [or] purchasers . . . because of sex . . . [or] familial status." 24 C.F.R. § 100.70(d)(2).

61. The Bank's Policy violates the FHA including but not limited to the foregoing statutes and regulations.

62. The Bank refused to include Mrs. Slaters' income until she returned to work preventing the closing of the Loan based on her sex and familial status in violation of the FHA.

63. The Bank, through its agents, has admitted that the Policy has been in place for several years.

64. Through the employment of the Bank's discriminatory Policy, the Bank willfully and wantonly discriminated against Mrs. Slater on the basis of familial status and sex in violation of the FHA.

65. As a result of the Bank's discriminatory conduct, Mrs. Slater and members of the Class suffered substantial damages.

66. Section 3613(a)(1)(A) of the FHA permits an individual to bring an action against any person or entity who has engaged in conduct which violates the FHA.

67. Mrs. Slater and members of the Class have suffered substantial damages as a result of the Bank's violations of the FHA and related regulations.

## **CONCLUSION**

WHEREFORE, Mrs. Slater demands that the Court render judgment in her favor and against the Bank as follows:

    A. Assuming jurisdiction of this action;

    B. Certify this action as a class action pursuant to all applicable provisions of the Federal Rules of Civil Procedure;

C.  Appoint Mrs. Slater as the representative of the Class and appoint undersigned as the counsel for the Class;

D.  Declare the Bank's actions set forth herein to be in violation of the ECOA and/or the FHA;

E.  Order the Bank to take appropriate action to ensure the conduct complained of herein is discontinued by the Bank or any of its agents or employees;

F.  Permanently enjoin the Bank, its agents, employees, and successors from discrimination on the basis of sex and familial status in violation of the ECOA and/or the FHA;

G.  Award actual damages in an amount to be proven at trial

H.  Award compensatory damages in an amount to be proven at trial;

I.  Award punitive damages to the extent permissible under law;

J.  Award reasonable attorney fees and costs of suit to the extent provided by law; and

K.  For such other and further relief to which Mrs. Slater and the Class may be entitled.

## JURY DEMAND

**Mrs. Slater requests that the Court set this case for a jury trial on all counts so triable.**

Dated: August 13, 2020

Respectfully submitted,

/s/ *Lysbeth L. George*
Lysbeth George, OBA #30562
Maggie Dowdy, OBA #32769
Law Office of Liz George, PLLC,
PO Box 1375
Blanchard, OK 73010
Telephone: (405) 689-5502
liz@georgelawok.com
maggie@georgelawok.com
**ATTORNEYS FOR MRS. SLATER**